ORIGINAL



FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAR 11 2016

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | ***FILED UNDER SEAL*** |
| *ex rel*. ASHLEY CASE, | ) | |
| | ) | ***FALSE CLAIMS ACT*** |
| Plaintiff-Relator, | ) | ***31 U.S.C. § 3729 et seq.*** |
| | ) | |
| STATE OF GEORGIA, | ) | |
| *ex rel*. ASHLEY CASE, | ) | |
| | ) | CIVIL ACTION NO. |
| Plaintiff-Relator, | ) | |
| | ) | **1:16-CV-0807** |
| v. | ) | |
| | ) | |
| LIVANOVA, P.L.C., | ) | |
| | ) | |
| Defendant. | ) | |

### COMPLAINT

1.     On behalf of the United States of America pursuant to the *qui tam* provisions of the Federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, and on behalf of the state of Georgia pursuant to the *qui tam* provisions of the Georgia False Medicaid Claims Act ("GFMCA"), O.C.G.A. § 49-4-168 *et seq*., plaintiff-relator ASHLEY CASE files this complaint against Defendant LIVANOVA, P.L.C.  The damages exceed well in excess of ***$2 million***.

2.     The damages to the United State and the State of Georgia arise out of hundreds of false and fraudulent claims, since at least as early as 2013, that Defendant LIVANOVA caused to be filed with the Medicare Program and the Georgia Medicaid program, among others, by:

- 1 -

(a)     Instructing physicians to use CPT Code 95974 falsely and
fraudulently to obtain the highest reimbursement rate when
filing claims for the electronic analysis and programming of
Defendant LIVANOVA's Vagus Nerve Stimulator Therapy
System ("VNS")—a class III FDA-approved medical device
implanted in patients as a "treatment of last resort" for adults
and children with refractory epilepsy (*i.e.*, drug-resistant
epilepsy), at a total cost exceeding *$20,000*;

(b)     Knowingly selling defective VNS medical devices from a
manufacturing lot known to contain defective VNS medical
devices; and

(c)     Making unlawful payments of money and other financial
considerations to licensed medical professionals solely to
induce them to prescribe and implant Defendant's VNS
medical device in patients.

### *Jurisdiction and Venue*

3.     This action arises under the False Claims Act, 31 U.S.C. § 3729,
*et seq*., the GFMCA, O.C.G.A. § 49-4-168 *et seq*.  This Court has jurisdiction
over this action pursuant to 31 U.S.C. §§ 3732(a) and 3732(b), and 28 U.S.C.
§§ 1345, 1367.

4.      Venue is proper in this district under 31 U.S.C. § 3732(a).

Defendant LIVANOVA transacts business within this district or at least one

act proscribed by 31 U.S.C. § 3729 occurred within this district.

5.      This Court has personal jurisdiction over defendant LIVANOVA

because this action arises out of its activities within the state of Georgia.

### *The Parties*

6.      ASHLEY CASE is a citizen of the United States and the state of

Georgia, acting in the capacity as relator for the United States pursuant to 31

U.S.C. § 3730(b) and as relator for the State of Georgia pursuant to O.C.G.A.

§ 49-4-168.2(c) (the "RELATOR").

7.      Defendant LIVANOVA, P.L.C. is a London, England-based

medical device manufacturer—formed in 2015 through the merger of medical

device manufacturers Cyberonics, Inc., of Houston, Texas, and Sorin, S.p.a.,

of Milan, Italy.  Defendant LIVANOVA's shares trade on the NASDAQ.  Its

website is:  www.livanova.com.

### *Defendant's Medical Device for*
### *Treating Drug-Resistant Epilepsy*

8.      Defendant LIVANOVA, like predecessor Cyberonics,

manufactures and markets a product called the Vagus Nerve Stimulator

Therapy System—a class III medical device that is FDA-approved as a

"treatment of last resort" for refractory epilepsy, *i.e.*, medication does not

- 3 -

bring seizures under control, for adults and children (as well as treatment-resistant depression).

9. Defendant LIVANOVA's VNS device is a pulse generator that produces controlled, mild electrical pulses that, first, get transmitted by a lead attached to the left vagus nerve in the neck and then, second, get sent to affected areas of the brain.

10. Each VNS device consists of (a) mechanical components that generate and deliver the electrical pulse, and (b) software that controls the amount and frequency of electrical pulses generated and sent to the patient's vagus nerve. The VNS software is installed, manipulated, changed, and updated through an external hand-held computer that an operator holds over the patient's chest—where the pulse generator has been implanted.

11. The VNS device is implanted in a patient's chest and neck through invasive surgery under general anesthesia.

12. The following image shows where the VNS device is implanted in the patient's chest and where the lead is attached to the patient's left vagus nerve:



13.     The costs of last-resort treatment for refractory epilepsy using Defendant LIVANOVA's VNS device are substantial, involving:

(a)     Purchase of Defendant LIVANOVA's VNS device;

(b)     The patient's consultation with primary-care physician regarding the underlying disability associated with the use of Defendant's VNS device;

(c)     Consultation with all specialists necessary to prescribe and implant Defendant's VNS device;

(d)     The surgical procedures necessary to implant, maintain, and remove Defendant's VNS device; and

(e)     The institutional in-patient and out-patient costs associated with implanting, maintaining, or removing the VNS device.

14.     The cost of reimbursement for Defendant LIVANOVA's VNS device, with its associated physician and hospital services, totals more than *$20,000* for each VNS device implanted in a patient.

- 5 -

15.     Substantial numbers of war veterans have developed epilepsy as a result of traumatic brain injury.  In fact, the Veterans Administration has established a total of 15 Epilepsy Centers of Excellence across the United States to treat both active-duty military and veterans who suffer epilepsy because of traumatic brain injuries.

16.     Defendant LIVANOVA's VNS System is the only medical device approved by the FDA for treating refractory epilepsy.

17.     More than 4,000 VNS devices are sold and implanted per year.

### *The Victim Programs*

18.     The Medicare program is a federally funded health insurance program.  Medicare Part A covers hospital services such as inpatient or outpatient surgery and treatment and other institutional care.  Medicare Part B covers doctor visits and outpatient services.  Medicare Part D provides prescription drug coverage.  Medicare covers persons over 65 years of age, as well as individuals 18 years of age or older who are disabled and eligible for disability benefits and Social Security Income ("SSI").

19.     Refractory epilepsy is a disability that qualifies persons not yet age 65 for Medicare coverage.  (20 C.F.R. Pt. 404, Subpt. P, App'x 1, *SSI Impairment Listings* 11.02, 11.03.)

20.     The Medicaid program, including Georgia's, provides medical benefits to qualifying low-income individuals who have no medical insurance

- 6 -

or inadequate medical insurance. The Medicaid program in each state is financed with monies appropriated by the United States Congress and from the state itself.

21.     The United States Department of Defense ("DOD") provides in-patient and out-patient care and federal health benefits to active-duty military personnel. The DOD is funded with taxpayer funds appropriated by the United States Congress.

22.     The Veterans Administration ("VA"), a part of the United States Department of Veterans Affairs, provides patient care and federal benefits to veterans and their dependents. The VA is funded with monies appropriated by the United States Congress.

23.     TRICARE is a federally funded health care program that covers the costs of services and devices delivered by civilian healthcare providers to active duty service members, National Guard and Reserve members, retirees, and their families and survivors worldwide.

24.     Federal Employee Health Benefits Programs ("FEHBP") provides healthcare benefits for qualified federal employees and their dependents. The United States government pays a portion of each participating employee's premium.

25.     The reimbursement practices for Medicare closely align with those for Medicaid, DOD, VA, TRICARE, and FEHBP.

- 7 -

26.    Reimbursement of a healthcare provider's claim for any service or medical device requires that it be reasonable and medically necessary. Billing for medically un-necessary services—such as services performed for no reason other than to increase the reimbursement—is illegal.

27.    Medicare, Medicaid, and the DOD, VA, TRICARE, and FEHBP healthcare programs cover the costs of VNS therapy.

## *Grounds for the Action*

28.    Since on or about February 2015, RELATOR has been employed by Defendant LIVANOVA, and predecessor Cyberonics, Inc., as a therapy consultant, *i.e.*, a sales representative.

29.    RELATOR's job was to promote the Defendant's VNS device to medical professionals in a position to recommend VNS therapy to patients.

30.    During her employment, RELATOR has covered the Defendant's Atlanta, Georgia territory—taking directions from and reporting to a Regional Manager.  RELATOR has been paid on a commission basis.

31.    Defendant LIVANOVA trained RELATOR and its other sales representatives to build and then exploit relationships of trust and reliance with physicians based on the representatives' superior knowledge of the technical capabilities of Defendant's VNS devices, their technical specifications and limits, and the appropriate CPT and ICD-9 codes.

- 8 -

32.    Defendant LIVANOVA trained its sales representatives to participate in every step of the lifecycle of a patient's VNS device to foster and increase the physicians' reliance on the Defendant, such as:

(a)    Meet with new patients on initial consultations and discuss, to the extent possible for the patient, any concerns, and provide follow up informational materials approved by the Defendant;

(b)    Assist with insurance authorizations;

(c)    Convince doctors and nurses to recommend VNS devices to potential candidate patients;

(d)    Train doctors and nurses in how to use the VNS System, including dosing and programming;

(e)    Sell and deliver the VNS device and any spare or replacement parts necessary for any approved candidate for implant to the healthcare facility or medical professional;

(f)    Be present during the patient's implant surgery to assist with:

(i)    Appropriate device settings and programming;

(ii)    Device trouble-shooting;

(iii)    System diagnostics;

(iv)    Proper implant documentation; and

(v)    Retrieval of a replaced device for return to the Defendant.

- 9 -

(g)     Meet with the neurologists and their patients after implant surgery for device "programming,"

(h)     Assist the neurologist in establishing and implementing the correct dose of current or stimulation;

(i)     Consult with doctors and patients after implantation to interrogate, program, and update the device;

(j)     Periodically check the patients' VNS devices to recommend upgrades, assess battery life status, and troubleshoot any device related problems; and

(k)     Collect removed devices, leads, and batteries for return to the Defendant.

33.     Defendant LIVANOVA also knowingly paid money and other financial considerations to medical professionals to induce them to recommend VNS therapy to their patients.

34.     Defendant LIVANOVA also knowingly paid money and other financial considerations to medical professionals to induce them to disclose patient names and contact information, so that Defendant's sales representatives could directly contact the patients (or their guardians) to persuade them to choose VNS therapy.

35.     The kinds of monetary payments and other financial considerations that Defendant LIVANOVA paid have included:

    (a)    Bogus honoraria ranging from $250 to $2,000 for speaking events that never occur paid to physicians and nurses;

    (b)    Elaborate meals for physicians (and guests) attended by Defendant's sales representatives;

    (c)    Resort accommodations, including the airline tickets;

    (d)    Cash payments directly to nurses;

    (e)    Expensive wine and gift cards given to nurses;

36.    Defendant LIVANOVA instructed at symposiums on VNS therapy attended by scores of physicians that changing, then changing back, the VNS device's program settings four times or asking medically unnecessary clinical questions of the patient justified billing under the highest-paying CPT Code 95974 for the physician's programming activities on the device.

37.    Defendant LIVANOVA has received scores of complaints from physicians that VNS devices from a certain manufacturing lot did not work. Defendant LIVANOVA did not notify any patients or physicians with implanted VNS devices from the same lot. And Defendant LIVANOVA has continued to sell VNS devices for implant from this same lot without advising the patients or physicians of the history of defects in this lot—which, if present, would require additional surgery to remove and replace the defective VNS device.

- 11 -

## COUNT 1
### Violation of 31 U.S.C. § 3729(a)(1)(A)
### (*Submission of a False or Fraudulent Claim for Payment*)

38.     Plaintiff-Relator ASHLEY CASE hereby realleges and incorporates by reference Paragraphs 1-37 of this Complaint.

39.     This is a claim for damages and civil money penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, against Defendant LIVANOVA, P.L.C. for knowingly presenting or causing to be presented false or fraudulent claims to the Medicare, Medicaid, DOD, VA, TRICARE, and FEBHP programs for payment of monies belonging to the United States, all in violation of 31 U.S.C. § 3729(a)(1)(A).

40.     These claims were false or fraudulent because the Defendant LIVANOVA, P.L.C. caused the Medicare, Medicaid, and the DOD, VA, and FEHBP healthcare programs to pay claims with federal funds based on false and fraudulent certifications of medical necessity and compliance with federal anti-kickback and Stark Act requirements.

41.     Defendant LIVANOVA, P.L.C. presented or caused to be presented these false and fraudulent claims to the Georgia Department of Community Health's Georgia Medicaid program, as a grantee under the federal Medicaid program, for payment of monies belonging to the United States that were to be spent and used on behalf of the United States and to advance the federal Medicaid program.

- 12 -

42. By virtue of the false or fraudulent claims presented or caused to be presented by Defendant LIVANOVA, P.L.C., the United States has suffered actual damages in an amount to be determined at trial, is entitled to recover three times the amount by which it was damaged, plus civil money penalties of not less than $5,000 and not more than $10,000 for each of the false or fraudulent claims presented or caused to be presented, plus interest, attorney's fees, and costs.

## COUNT 2
### Violation of 31 U.S.C. § 3729(a)(1)(B)
### (*Creation or Use of a False Record or Statement Material to a False or Fraudulent Claim*)

43. Plaintiff-Relator ASHLEY CASE hereby realleges and incorporates by reference Paragraphs 1-37 of this Complaint.

44. Defendant LIVANOVA, P.L.C. knowingly made, used, or caused to be made or used, false records and statements, including false certifications of medical necessity and compliance with federal anti-kickback and Stark Act requirements, material to false or fraudulent claims to the Medicare, Medicaid, DOD, VA, TRICARE, and FEBHP programs for monies belonging to the United States, all in violation of 31 U.S. C. § 3729(a)(1)(B).

45. The United States has been damaged by the creation or use, or both, of false records and statements material to false or fraudulent claims by Defendant LIVANOVA, P.L.C in an amount to be proven at trial.

- 13 -

46.     The United States has suffered actual damages and is entitled to recover three times the amount by which it was damaged, plus civil money penalties of not less than $5,000 and not more than $10,000 for each of the fraudulent claims presented or caused to be presented, plus interest, attorney's fees, and costs.

### COUNT 3
### Violation of 31 U.S.C. § 3729(a)(1)(C)
### *(Conspiracy to Commit Violations*
### *of 31 U.S.C. §§ 3729(a)(1)(A, B, G)*

47.     Plaintiff-Relator ASHLEY CASE hereby realleges and incorporates by reference Paragraphs 1-37 of this Complaint.

48.     Defendant LIVANOVA, P.L.C. and others known and unknown, did combine, conspire, confederate, and agree, and reach an understanding and agreement, both express and implied, with each other and with others, to commit violations of 31 U.S. C. §§ 3729(a)(1)(A, B, G), 3729(a)(1)(B), and 3729(a)(1)(G).

49.     In furtherance of their conspiracy, the defendants and their co-conspirators committed hundreds of overt acts of (a) causing the submission of false and fraudulent claims, and (b) creating false records and statements material to false and fraudulent claims.

50. The United States has been damaged by the conspiracy of

Defendant LIVANOVA, P.L.C., and others known and unknown, in an

amount to be proven at trial.

51. The United States has suffered actual damages and is entitled to

recover three times the amount by which it was damaged, plus civil money

penalties of not less than $5,000 and not more than $10,000 for each of the

fraudulent claims presented or caused to be presented, plus interest,

attorney's fees, and costs.

### COUNT 4
### Violation of O.C.G.A. 49-4-168.1
### *(False or Fraudulent Claims Paid or Allowed,*
### *False or Fraudulent Statements and Certifications,*
### *False or Fraudulent Concealment of GA Medicaid Monies, and*
### *Conspiracy to Make False Claims and Records and Conceal Funds)*

52. Plaintiff-Relator ASHLEY CASE hereby realleges and

incorporates by reference Paragraphs 1-37 of this Complaint.

53. Defendant LIVANOVA, P.L.C. knowingly made, used, or caused

to be made or used, false or fraudulent claims to (a) the Georgia Medicaid

program, (b) any officer, employee, fiscal intermediary, grantee, agent, or

contractor of the Georgia Medicaid program, or to other persons or entities if

it results in payments by the Georgia Medicaid program, if the Georgia

Medicaid program provides, has provided, or will provide any portion of the

money or property requested or demanded, (c) any contractors, grantees, or

other recipients for any portion of the money or property requested or demanded if the Georgia Medicaid program will reimburse such monies or property, and (d) obtain money or property if the money or property is to be spent or used on behalf of or to advance the Georgia Medicaid program, all in violation of the GFMCA, O.C.G.A. § 49-4-168.1(1).

54.    Defendant LIVANOVA, P.L.C. knowingly made, used, or caused to be made or used, false records and statements material to false and fraudulent claims to (a) the Georgia Medicaid program, (b) any officer, employee, fiscal intermediary, grantee, agent, or contractor of the Georgia Medicaid program, or to other persons or entities if it results in payments by the Georgia Medicaid program, if the Georgia Medicaid program provides, has provided, or will provide any portion of the money or property requested or demanded, (c) any contractors, grantees, or other recipients for any portion of the money or property requested or demanded if the Georgia Medicaid program will reimburse such monies or property, and (d) obtain money or property if the money or property is to be spent or used on behalf of or to advance the Georgia Medicaid program, all in violation of the GFMCA, O.C.G.A. § 49-4-168.1(2).

55.    Defendant LIVANOVA, P.L.C., and others known and unknown, did combine, conspire, confederate, and agree, and reach an understanding and agreement, both express and implied, with each other and with others, to

- 16 -

violate O.C.G.A. § 49-4-168.1(1, 2, 7), all in violation of the GFMCA, O.C.G.A. § 49-4-168.1(3).

56.    The state of Georgia has been damaged by the submission of false and fraudulent claims, as well as the creation or use, or both, of false records and statements, and the concealment of Georgia Medicaid monies, and the conspiracy to commit same, by and caused by Defendant LIVANOVA, P.L.C. in an amount to be proven at trial.

57.    The state of Georgia has suffered actual damages and is entitled to recover three times the amount by which it was damaged, plus civil money penalties of not less than $5,000 and not more than $10,000 for each of the fraudulent claims presented or caused to be presented, plus interest, attorney's fees, and costs.

## *PRAYER FOR RELIEF*

**WHEREFORE**, Plaintiff-Relator ASHLEY CASE respectfully prays:

A.    With respect to Counts 1-3, judgment be entered in favor of Plaintiff-Relator ASHLEY CASE, on behalf of the United States and against Defendant LIVANOVA, P.L.C. for all damages sustained by the United States under the False Claims Act, for civil money penalties of not less than $5,000 and not more than $10,000 for each of the false or fraudulent claims or the false records material to false or fraudulent claims, plus interest, attorney's fees, and costs;

- 17 -

B.     With respect to Count 4, judgment be entered in favor of

Plaintiff-Relator ASHLEY CASE, on behalf of the state of Georgia and

against Defendant LIVANOVA, P.L.C. for all damages sustained by the state

of Georgia under the GFMCA, for all applicable civil money penalties for each

of the false or fraudulent claims presented or caused and false records

material to false or fraudulent claims, plus interest, attorney's fees, and

costs; and

C.     All such other and further relief and benefits be ordered as the

cause of justice may require.

### *JURY TRIAL DEMANDED*

*Plaintiff-Relator hereby requests a trial by jury.*

Respectfully submitted,

*Co-Counsel*
JACK ROSENBERG
Georgia Bar No. 614475
5425 Glenridge Dr. Ste 53
Atlanta, GA 30342
404-343-1091 (phone)
404-343-1497 (facsimile)
jackrosenberg2@gmail.com

MARC N. GARBER
Georgia Bar No. 283847
mngarber@garberlaw.net
ALAN H. GARBER
Georgia Bar No. 283840
ahgarber@garberlaw.net
THE GARBER LAW FIRM, PC
4994 Lower Roswell Rd Ste 14
Marietta, GA 30068-5648
(678) 560-6685
(678) 560-5067 (facsimile)

*Attorneys for Plaintiff-Relator
Ashley Case*